Opal Georgia CAVANESS, (Plaintiff) Appellant,

v.

Luther Ray CAVANESS, (Defendant) Respondent.

No. 30613.

St. Louis Court of Appeals.

Missouri.

July 18, 1961.

Josephus M. Todd, Wm. E. Dietz, William L. Mason, Jr., St. Louis, for appellant.

Granville L. Gamblin, Clayton, for respondent.

RUDDY, Judge.

Plaintiff's petition for divorce charged defendant with conducting himself in such a manner as to render plaintiff's condition intolerable and "generally unendurable." The general indignities alleged were that defendant associated with another woman; that he failed and refused to provide for plaintiff, and that he tricked plaintiff into dismissing a suit for separate maintenance previously filed by her on the promise of resuming cohabitation, and five days after the reconciliation he abandoned plaintiff. After a hearing the trial court denied plaintiff's petition for divorce and gave as its reasons that "plaintiff failed to sustain her burden of proof as to any indignities as required by law" and that plaintiff "failed to show by evidence * * * that she is the innocent and injured party * *."

Plaintiff appealed from the judgment dismissing her petition.

Plaintiff was an oft married individual bringing into the home of the new husband (defendant) after their marriage four sons that plaintiff had by some of her previous marriages. One child was born of the marriage plaintiff seeks to terminate.

The first contention urged by plaintiff in her effort to reverse the lower court's judgment and have this court grant the prayer of her petition is that the trial court erred in finding that she failed to sustain her burden of showing indignities and in finding that she was not an injured party. In her second contention she charged that the trial court erred in finding that she was not an innocent party.

The following summation of the evidence reveals that the court did not err in the respects charged.

Plaintiff married defendant on the 25th day of October, 1958. Prior thereto she had been married at least three times. The children of the prior marriages were all boys and their names and ages are as follows: Cletus Davis, 22; Ronnie Davis, 20; Billy Martin, 18 and Wayne Barnes, 11 years of age. After the marriage plaintiff continued to live with her husband until some time in February 1959, at which time there was a short period of separation. Thereafter, plaintiff lived with defendant until March 19, 1959. She testified that on this date her husband told her he was going out of town. She asked him if it was with another woman and he then told her, "Well, it could be." She further testified that the separation which took place in February was because of trouble she and her husband had over one of the boys. On this occasion she said she remonstrated with her husband about striking the child and that she told him "Luther Ray, I can't have you mistreating my child. If you can't be with me like you ought to, you can take your clothes and leave." He accepted her sug-

gestion and left immediately, returning within two or three days. The separation which took place March 19, 1959, continued until October 1959, when she and her husband became reconciled and, as she said, she returned to him in an effort to make a success of the marriage. During the separation plaintiff filed suit for separate maintenance. After plaintiff and defendant became reconciled defendant stayed with plaintiff for five days. She testified that on the day he left he got up in the morning and told her he was going to work. Thereafter, he never did return to their home.

Following this separation defendant filed a suit for divorce at Houston, Missouri. There is nothing in the record to show what happened to this divorce action. Thereafter, plaintiff filed the present suit. When asked how she treated her husband, she said the best way "she knew how." When asked how he treated her, she answered, "Well, I can't say that he was mean to me in any way as long as he lived there." She further testified that on the way home from work one evening defendant told her he had to go out of town on a trip and she asked him what for and he said, "to get some things straightened out before you and me can live together."

One night as plaintiff was driving in the 4400 block of Shaw Avenue, she saw defendant coming out of a house with another woman. The other woman and defendant got into a car and both left in the car. This occurred about 10 P.M. on the evening in question and was the only time plaintiff ever saw this woman and her husband together. When asked if she took the matter up with her husband, she said that she tried to talk to him about it but he denied being with the woman on the occasion in question. While the date of this alleged occasion is not shown in the record, it seems to have taken place sometime after the separation of March 19th. She said when she discussed the other woman with her husband, there were others present and named them, none of which,

however, testified in the case. In fairness to plaintiff, it must be said she did point out that these witnesses were unavailable. In connection with this same event, of seeing her husband with this woman, she testified that on this same night defendant came to her house with this woman in the company of a number of other people. She further testified that after the last separation she asked defendant what he meant by coming back to her and staying only five days and then walking out and leaving her, and he answered, "I don't ever—just don't aim to live with you, Opal."

With regard to the charge that defendant failed to provide for her, her testimony is sparse and rather incomplete. In this connection she testified that her landlord had obtained a judgment against her for rent due on premises at 5509 Magnolia Avenue, rent which she was unable to pay. She said this was where she and defendant lived at one time. However, there is nothing in the record to show that this rent was applicable to the period when plaintiff and defendant lived together and a close reading of the record indicates that it pertained to a period during their separation. She admitted that while they were separated defendant was paying her, pursuant to a court order and prior to the court order had been paying her, either $15 or $25 per week.

She further testified that the household bills were unpaid. Here again, her testimony fails to specify the dates when these bills were incurred, whether during the time the parties were living together or during their separation. As far as she knew, the hospital and doctor bills for the birth of their child had never been paid by her husband.

She further testified that the temporary award made by the court was being paid by her husband to her regularly and timely. When asked if prior to the award he provided anything for the care of the child, she answered, "Yes, he had sent me some money all along."

In her cross-examination plaintiff, on several occasions, denied that she had any trouble with her husband about the children. Later, when pressed about the matter, she said that they might have had a little misunderstanding about them. Finally, she admitted there was trouble about them, however, adding, the trouble did not amount to "anything." She could not remember having any trouble with her husband about the conduct of one of her sons when he brought girl-friends to the home, stating that nothing went on between them as far as she knew. She denied that her husband complained about the boy and his girl-friend going into the bedroom and shutting the door.

Opposing plaintiff's testimony was that of defendant, who testified that the first separation took place in February 1959. When asked to give his reason for the separation he said, "Well, sir, time after time, (one of the boys) would bring his girl-friend there and they would go to bed together." He said he complained to his wife about the boy's conduct and that she told him, "If I didn't like it to get my clothes and get out." When he attempted to correct another son, plaintiff told defendant that no man could tell her boy what to do and that if defendant did not approve of the conduct of the boys he could get his "duds and get out." These instances precipitated the first separation. Defendant returned to his wife in a few days and separated again on March 20, 1959.

This separation continued until some time in October, 1959, when he returned to plaintiff, at which time he found the one son was still bringing girl-friends to the home. Defendant again objected to the boy's conduct and was again told by plaintiff "that she didn't marry no man to come in here and tell her boys what to do. If I didn't like it, to get my clothes and get out." He then left and has never returned.

Defendant further testified that he paid the rent for 5509 Magnolia Avenue while they lived there and that he paid plaintiff, after he left her, all money due on the court's order for pendente lite allowances. He admitted he had not paid the doctor's bill for the birth of their child because he did not have the money. He said he provided for plaintiff while living with her. After the separation and before the court's pendente lite order he paid plaintiff $15 per week. Plaintiff was also employed during the marriage.

He denied the charge of his wife that he associated with another woman on the occasion related in plaintiff's testimony. He admitted he had been in the home of a woman who lived on Shaw Avenue, on several occasions, but never by himself. He said he went there on these occasions with his two brothers and another man and his wife. He said one of his brothers "went out with" this woman and he was asked to go along with the group. He denied ever accompanying this woman alone on any occasion and denied that he told his wife there "could be" another woman.

█ It is the duty of this court to review the record de novo, make its own findings of fact and own conclusions. However, should irreconcilable conflict appear in the testimony, we will defer in a large measure to the findings of the trial judge who had the advantage of seeing the witnesses and observing their manner of answering questions. Greenbury v. Greenbury, Mo.App., 223 S.W.2d 153. Plaintiff agrees that the rule just stated is the pathway we must follow in reviewing this case.

At the outset we should point out that there is irreconcilable conflict in the testimony of plaintiff and defendant in connection with an important matter that controls the disposition of the case. We have in mind the charge and testimony of defendant that one of plaintiff's boys brought girl-friends to the home and went to bed with them and that defendant complained about this conduct. Plaintiff denied this ever occurred and denied the complaints were made. The trial court must have found that it did occur and that such complaints were

made by defendant. This finding of the court depends on which witness the court believed. Obviously, the trial court believed the defendant. On this finding we agree with the trial court, giving due deference to the trial court's superior position to determine the credibility of the parties in question. Frankly, an examination of the record in this case shows that plaintiff vacillated considerably when questioned about the complaints made to her by her husband about her children's conduct. Of course, agreeing with the trial court on this aspect of the case marks plaintiff as lacking the innocence required under the law before she is entitled to a decree of divorce. See Ezell v. Ezell, Mo.App., 348 S.W.2d 592. This, alone, is sufficient ground for the denial of a decree of divorce.

However, plaintiff's case fails in other respects. Her charge of associating with another woman lacks support in the evidence. She testified to only one occasion when she thought she saw her husband with another woman. She said she saw her husband leave with this woman in her automobile, yet admitted that later in the evening her husband, in the company of others and this woman, called at the home of plaintiff. There is no evidence that plaintiff remonstrated with her husband about the woman's presence in the group. Her failure to do this gives credence to the testimony of defendant that this woman was a friend of defendant's brother and "went out with" him on the occasion in question. We think the trial court was correct in holding that plaintiff failed to sustain her burden of proof in connection with the charge that her husband associated with another woman.

The same must be said about her charge that defendant failed to adequately provide for her. There was no evidence that he failed to provide for her or pay the bills while they were living together, except the unpaid doctor's bill for the birth of the child. He said he was unable to pay this bill because of lack of money. The judgment against plaintiff for rent due on the Magnolia premises was for a period when the parties were separated. Plaintiff admitted that during all the periods they were separated defendant paid support money to her regularly, either voluntarily or under the court's pendente lite order. The proof of this charge lacks substance.

The charge that defendant tricked plaintiff into dismissing her previous separate maintenance suit and going back to live with him falls short of proof. First of all, we cannot be sure that plaintiff dismissed her separate maintenance suit, if one was pending. While it is intimated in the course of one of the questions propounded by plaintiff's attorney that a separate maintenance suit brought by plaintiff had been "dropped," no place in plaintiff's testimony did she state that she dismissed a pending separate maintenance suit. However, this may be, there is no evidence that defendant caused or tricked plaintiff into dismissing a separate maintenance suit if one was pending and dismissed by plaintiff. As far as the record before us is concerned, there is nothing to show what brought about the last reconciliation. It merely shows that defendant and plaintiff seemed to have reconciled their differences, at least they agreed to give the effort of living together another trial. When defendant found that the situation had not changed, insofar as the one boy's conduct in the home with his girl-friends was concerned, defendant decided to again leave. Plaintiff admits defendant complained about the conduct of the boys, although she denied he made the specific complaint given by him in his testimony. The trial court found, and we find, that he had the right to complain about the one boy's conduct with his girl-friends. Plaintiff admits she told him when he made these complaints to take his clothes and leave. He accepted her suggestion, and we do not think she can now be heard to complain. In considering all the testimony, we are mindful of plaintiff's testimony that defendant was never mean to her. Nothing in this record shows that he was mean to her children.

We have shown that plaintiff failed to show that she was an innocent party. In addition, she has failed to prove the commission of any indignities on the part of her husband and, therefore, has failed to show that she is an injured party.

The judgment of the trial court should be affirmed. It is so ordered.

ANDERSON, P. J., and WOLFE, J., concur.